Lois H. WILCOX, Appellant,

v.

Joe P. WILCOX, Appellee.

Court of Appeals of Kentucky.

Oct. 21, 1955.

Rehearing Denied March 23, 1956.

Gordon, Gordon & Mills, Madisonville, Edward H. Johnstone, Princeton, for appellant.

Earle M. Nichols, Madisonville, for appellee.

SIMS, Judge.

Joe P. Wilcox obtained a judgment divorcing him from his wife, Lois H. Wilcox, and was awarded the custody of their two daughters, who were then 6 and 12 years of age, with the right of visitation given the mother. The judgment awarded Mrs. Wilcox alimony in the lump sum of $2,500 and in the further sum of $125 per month over a period of five years. The mother appeals from so much of the judgment as gave the custody of the children to the father, and he cross-appeals from that part of the judgment awarding the wife alimony.

The petition charged Mrs. Wilcox with cruel and inhuman treatment. The answer was a general denial and by way of counterclaim she sought a divorce on the same ground, and asked alimony in the sum of $25,000 and $200 per month for the support of the two girls. Subsequently, an amended petition charged the wife with "adultery or such lewd and lascivious behavior on her part as proved her to be unchaste." This charge was denied in the wife's reply.

A great amount of proof was taken by depositions, much of which deals with facts and conditions of an unsavory nature. A review of the evidence would extend this opinion beyond a reasonable length without serving any useful purpose and would tend to blacken the characters of the litigants. Hence, we will only state in a general way what the proof shows rather than attempt to detail it.

This couple married in 1936 and lived together until their separation in June 1952.

The husband was a merchant and the wife worked in the store, keeping all the books, and at times she had full charge of the store while he was out of the state. With the wife putting some of her earnings in the business, the exact amount is not shown, and with the financial assistance of her brother and of the husband's father, the business prospered. At the time the domestic difficulty arose Mr. Wilcox had a net worth of $35,000 or $40,000.

The couple moved to Princeton, Ky., in 1946. Since that time Mrs. Wilcox has not been in the best of health and Mr. Wilcox became interested in civic and fraternal matters which took him away from home some four or five nights a week, and a coolness developed between them.

The wife became interested in Glenn Oller, a man working in her husband's store, and her conduct with Oller was most indiscreet. They were seen together many times in isolated locations on country roads and in compromising circumstances. There is testimony in the record that shortly before their separation Mrs. Wilcox told her husband she was not in love with him but loved Oller.

Under the facts and circumstances shown in this record the chancellor correctly granted the husband a divorce. The general rule is that where the divorce is granted to the husband and the wife is guilty of any moral delinquency, she can recover no permanent alimony. Humphress v. Humphress, Ky., 240 S.W.2d 625, and authorities there cited. Also see annotations 34 A.L.R.2d 324, where many cases from this court on the subject are discussed. While there is some testimony that Mrs. Wilcox's small earnings went into her husband's business, it cannot with reason be said the $2,500 permanent alimony was in reality a restoration under KRS 403.065 of what she contributed to the husband's business. Her services in the store and elsewhere were rendered as a member of the family and to aid in the support of the family. Lewis v. Lewis, 196 Ky. 701, 245 S.W. 509; Sharp v. Sharp, Ky., 283 S.W.2d 172. That part

of the judgment awarding alimony is reversed.

■■ We come now to the custody of the children—ever a difficult question for all courts. The paramount concern of courts is what is for the best interest of the children. Ordinarily, the custody of children of tender years, especially girls, is awarded to the mother, unless it is shown she is a person of unfit character or is unable to provide a suitable home. Bowman v. Bowman, 310 Ky. 509, 221 S.W.2d 71.

■ This record shows Mrs. Wilcox was an excellent mother and never failed to give her two daughters the best of care and attention and she lavished upon them her love and affection. True, she was indiscreet with Oller, but soon after her divorce she married him. We have held in several recent cases that although the mother had been indiscreet with a man whom she married shortly after her divorce, such indiscretions do not necessarily brand her as a person unfit to have the custody of her young children, where there was no evidence of promiscuity. Ruttencutter v. Ruttencutter, 293 Ky. 556, 169 S.W.2d 604; Clark v. Clark, 298 Ky. 18, 181 S.W.2d 397; Price v. Price, 306 Ky. 214, 206 S.W.2d 924; Hager v. Hager, 309 Ky. 803, 219 S.W.2d 10. There was some effort made to connect her name in an unfavorable light with an officer in the church she attended but it was not substantiated by the evidence.

Mr. Wilcox's conduct, as was pointed out in the opinion of the chancellor, "is about as bad as hers." He had reference to the time ten or twelve years ago when Mr. Wilcox was arrested in Tennessee for an affair he had with an 18-year old girl. Mrs. Wilcox forgave this indiscretion upon his part and continued to live with him as his wife.

■ It can be inferred from the record the older daughter (now 14 years of age) desires to live with her mother. Mr. Wilcox is in no position to care for and see after his daughters and give them the parental attention they need. He proposes to put them in the home of his mother. This would deprive these young girls of direct attention from and association with either parent and would be a difficult adjustment for them to make. It is our judgment the chancellor erred in taking the custody of these young girls from their mother and he should have left them with her giving the father the right of visitation at reasonable times and places. A reasonable sum for the support of these two children is $150 per month, which amount the father is amply able to pay their mother until they arrive at the age of 21, or until there is a change in conditions affecting the allowance. When the older girl reaches the age of 21 the allowance will be reduced to $75 per month until the younger child attains her majority. This allowance should be sufficient to support the children without the father providing them a house, and that part of the chancellor's judgment that the mother surrender the house and furnishings to the father will not be disturbed. Should Mrs. Wilcox attempt to take the children out of the state, the chancellor will require of her a reasonable bond guaranteeing their return.

■ No objection is made in appellee's brief to the $1,200 attorney's fee allowed Mrs. Wilcox's counsel. However, her counsel suggests they should be allowed an additional fee of $300 for services in this court. Mr. Wilcox's counsel are correct when they say the question of fee to be allowed the wife's attorneys for services in this court is not before us until the circuit court rules on that question. Upon the filing of the mandate counsel for Mrs. Wilcox can move the circuit court for a fee for services in this court. If either party feels aggrieved at the ruling on the motion, then an appropriate motion may be made here for our ruling thereon. Bobbitt v. Bobbitt, 297 Ky. 28, 178 S.W.2d 986; Maynard v. Maynard, Ky., 251 S.W.2d 454.

The judgment is reversed both on the appeal and the cross-appeal and one will be entered which conforms to this opinion.