## KINCAID, In re

Probate Court, Muskingum County

No. 44297.   Decided April 1, 1946.*

Clarence A. Graham, Zanesville, for petitioner.
Thomas A. Joseph, Zanesville, for respondent.

*No appeal taken.

## OPINION

By LAMNECK, J. (Sitting by assignment.)

This is an action in habeas corpus wherein the mother of Michael Richard Kincaid, a minor born on July 24, 1942, seeks to obtain custody and control of said minor from its father. The parents of the child are living in a state of separation but are not divorced. The husband resists his wife's petition and claims in his answer that she is an unfit person to have the custody of said child.

From the time of the marriage of the contending parties, during the latter part of 1941, until December 12th, 1942, when the husband was inducted into the military service of the United States, they lived at the home of the wife's parents, with the exception of a period of approximately three months during the summer of 1942 when they lived in furnished apartments in the city of Zanesville.

From the time of the husband's induction into the military service on December 12, 1942, and until he was discharged on August 30, 1945, the wife and the child lived at the home of the wife's parents with the exception of a period of approximately five months during the fore part of 1944 when she, with the child, occupied an apartment with another service man's wife and her small child. Some time after the husband's discharge from the military service he retained possession of the child on a visitation and now refuses to return it to the wife who continues to live with her parents.

It is clear from the evidence submitted in this case that

the wife and her co-tenant entertained men in their apartment at parties which lasted until late hours at night when she was living separate and apart from her parents during 1944; that she was seen in the company of a particular man on numerous occasions during 1944 and 1945, and that he was a frequent visitor at her apartment during 1944; that she frequented public places where intoxicating liquors were dispensed, in the company of various men including members of the military forces, when her husband was overseas, and that she frequently drank beer and light wines, but there is no evidence to indicate that she became intoxicated. From this evidence the husband contends that his wife is morally unfit to have custody of the child.

Such conduct on the part of any wife while her husband is in the military service, or at any other time, is certainly indiscreet to say the least, and is to be condemned and not condoned. While there is no direct evidence to sustain a charge of adultery against the wife while the husband was overseas, a court might be justified in inferring the same from all the circumstances in this case, and if such conduct were continuing, no court would sustain her application. However, there is no evidence to indicate that the wife has engaged in any questionable conduct during the past year. On the contrary, it appears that she is now leading a respectable life in her parent's home.

Some evidence has been submitted to show that the husband also partakes moderately of intoxicating liquors.

The evidence indicates that both of the contending parties in this case have parents of good moral character; that both families live in the best section of Zanesville, have good homes, and are religious and devout people and active in the affairs of their respective churches. Since the husband is living with his parents, and the wife with hers, and no doubt will continue to do so for some time in the future, the child would be in a proper environment whether the child is placed in the custody of either party.

Under the provisions of §12162 GC, the probate court has jurisdiction in habeas corpus, and under §12161 GC "a person entitled to the custody of another, of which custody he is unlawfully deprived, may prosecute a writ of habeas corpus to inquire into the cause of such deprivation."

Under the earlier decisions of our own courts and the courts of England, it was held in the absence of any positive disqualification on the part of the father, for the proper discharge of his parental duties, and when there was no special

reason, touching the welfare of the child, for preferring the mother, the father had a paramount right to the custody of a child which no court was at liberty to disregard.

It is now held that when a husband and wife are living in a state of separation, and each is equally well qualified in every respect to be entrusted with the custody and training of their infant children, a court will not interfere, upon habeas corpus, to change the possession from one to the other. (In re Corey 145 Oh St 413, 61 N.E. (2d) 892.)

Many of the earlier decisions are no longer applicable by reason of the enactment of §§8032, 8033 and 8034 GC which provide in part in so far as they relate to this case that "when a husband and wife are living separate and apart from each other, or are divorced and the question as to the care, custody and control of the offspring of their marriage is brought before a court of competent jurisdiction in this state, they shall stand upon an equality as to the care, custody and control of such offspring, so far as it relates to being either the father or mother thereof. The court shall decide which one of them shall have the care, custody and control of such offspring, taking into account that which would be for their best interests. The court may order either or both parents to support or help to support such children, whoever be their custodian, and also may make any just and reasonable order or decree, permitting the parent who is deprived of such care, custody and control of children to visit them at such time and under such conditions as the court may direct." From the latest decisions and the foregoing provisions of the statutes it appears that in a proceeding in habeas corpus, instituted by one parent against the other, who are living in a state of separation, to obtain the custody of a child, the court has jurisdiction to determine the custody and control of such child and make such order for its care and support as may be necessary, only if one parent has a superior right to the custody of such child and the welfare of the child demands that such parent should have its custody. (Gishwiler v Dodez, 4 Oh St 615; State v Niles, 11 Dec. Rep. 248, 25 Bull. 327; In re Corey, 145 Oh St 413, 61 N.E. (2d) 892.)

In determining what disposition of the custody of a particular child will serve its interests and promote its welfare, the court should consider the qualifications and fitness of the respective parties, their adaptability to the task of caring for the child, their ability to control and direct it, and the age, sex and health of the child, its temporal, mental and moral well-being, the environment and entire surroundings of the

proposed home, and the influences likely to be exerted upon the child. (Nelson on Divorce, Sec. 15.01.)

It is now almost universally recognized that the mother is the natural custodian of a child of tender years, and unless she is unfit to have the custody of her child, or there are special or extraordinary reasons for so doing, the mother should not be deprived of its custody. There is no substitute for a mother's love and devotion, and a child should not be deprived of a mother's love unless it is clearly shown that she is not a fit and proper person to have its custody, and that its best interest demands that its custody be placed with some other person. Some courts have gone so far as to rule that a mother will not be deprived of the custody of a child of tender years unless it clearly appears that she is so far an unfit and improper person that her custody would endanger its welfare. (Maley v Maley, 18 Wash, (2d) 766, 144 Pac. (2d) 262; Clark v Clark, 298 Ky. 18, 181 S.W. (2d) 397.) The reason must be strong and decisive such as gross immorality, abuse of the child or gross neglect. (Burt v Burt, 48 Wyo. 19, 41 Pac. (2d) 524; Layton v Layton, 149 Pac. (2d) 574.)

In determining the question of the custody of children between parents, the judgment of the court cannot be controlled by any consideration of merit or blame, punishment or reward, of either parent except as such considerations may reflect upon the fitness of the parties to properly rear the child.

Courts generally refuse to permit children to remain with a mother who is lewd or unchaste, or who commits acts of adultery or who is living in a state of adultery. But suspicious conduct on the part of the mother is not sufficient, nor where her conduct on several occasions is not in accordance with the proprieties as judged by rigorous code of morals. Even where a mother has committed acts of adultery and is not grossly immoral, such acts may be overlooked where the circumstances show repentance, and other facts show the repetition of such offenses improbable. Especially is this true where the mother is doing everything possible to make atonement for her misconduct, and has been leading an exemplary life for some time prior to and at the time of the hearing on the question of custody. (Nelson on Divorce, Sec. 15.06.)

It appearing to the satisfaction of the court that the petitioner in this case is living with her parents who are persons of good moral character, in a good residential district in the city of Zanesville; that her conduct has been proper for some time prior to and at the time of the hearing of this case, and

that she will maintain her home with her parents for some time in the future; and that the morals and well-being of the child will not be endangered if she is awarded custody of the child, and that she has a superior right over the father, other things being equal, because of the child's age, it will be ordered that the exclusive custody, care and control of the child be awarded to the petitioner, granting to the father the right to have said child visit with him at his parents' home once a week beginning on Friday and Saturday of alternate weeks from four o'clock P.M. one day until four o'clock P.M. the next day, all of which is to continue until the further order of a court of competent jurisdiction acting on changed conditions of the parties.