**Daniel Clay QUINN, Appellant,**

v.

**Oscar FRANZMAN, Jr., Appellee.**

Court of Appeals of Kentucky.

March 13, 1970.

Thomas W. Burks, Frank E. Haddad, Jr., Louisville, for appellant.

Charles W. Dobbins, William A. Buckaway, Jr., Louisville, for appellee.

EDWARD P. HILL, Jr., Chief Justice.

This is a proceeding relating to the appointment of a guardian for Gregory Franzman, age 13, Cynthia Franzman, age 10, and Mark Franzman, age 8.

The parents of the three minor children died December 8, 1967. At the time of the parents' untimely death, the family was living in Louisville. Shortly thereafter Daniel Clay Quinn, a maternal uncle of the three children, sought to be and was appointed guardian for the three children by the Jefferson County Court. This appointment was made without notice to Oscar Franzman, Jr., who is a paternal uncle of the children, with whom the children were then living. Franzman filed an objection to the appointment of Quinn as guardian and filed his application asking that he, Oscar Franzman, Jr., be appointed guardian for the three children and for their care, custody, and control.

The Jefferson County Court appointed a special commissioner to determine which one of the uncles should be appointed such guardian. The special commissioner conducted a lengthy hearing at which time both parties introduced testimony describing in detail the advantages each uncle had to offer the three Franzman children. In addition to the testimony depicting a favorable family atmosphere, there was a considerable amount of testimony relating to the availability of educational, recreational, and religious facilities near the homes of the respective contenders.

In his report and recommendation, the special commissioner stated he found that Mr. Quinn and Mr. Franzman each was highly qualified to be appointed guardian of the Franzman children. Nevertheless,

the special commissioner reached the following conclusion:

"Equating, however, the many factors shown by the evidence, with the best interest and welfare of the children, it appears that they should not be removed from their present environment, the schools where they now attend, or from the home of Oscar Franzman, Jr., where they have lived since the death of their parents."

The commissioner's report and recommendation was adopted by the Jefferson County Court, Probate Division, and the motion to appoint Oscar Franzman, Jr., as guardian was sustained. After the Jefferson County Court entered an order appointing Franzman guardian of the three Franzman children, the appellant herein, Daniel Clay Quinn, appealed to the Jefferson Circuit Court.

A trial *de novo* was held in the circuit court. Again the parties were afforded the same opportunity to present their evidence as they had previously done in the lower court. Substantially the same evidence was introduced in both proceedings. The only major exception was that the circuit court allowed the three Franzman children to testify. Upon learning Gregory, the oldest child, was so near the age of fourteen (thirteen years and eleven months old), the chancellor exercised his discretion by invoking the provisions of KRS 387.020, which confers the right upon a fourteen-year-old child to nominate his guardian. Gregory then nominated his Uncle Daniel Quinn as his choice for his guardian.

Nevertheless, the chancellor concluded, " * * * we believe that their best interests require that they continue to make their home with the Oscar Franzman family." As part of the judgment the chancellor allowed Gregory, the oldest child, to elect, if he chose to do so, the uncle with whom he wanted to live.

On this appeal the appellant asserts the trial court failed to consider several important factors: (1) the relative differences in the ages of the applicants for guardianship and their prospective wards; (2) religious compatibility as between the applicants for guardianship and their prospective wards; and (3) preservation of the family unit of the three orphans as a group.

In support of the first point of error asserted, appellant cites the differences between the ages of the appellant and his wife (both are 32) and the ages of the appellee and his wife (51 and 48). Appellant argues that their ages are closer to the deceased parents' ages, and for this reason he and his wife would be far more compatible with the wards than would the older appellee and his wife. In other words, appellant contends there is a "generation gap" between the appellee and the wards.

■ While it is correct there is no indication in the record that the chancellor considered the differences in the ages of the parties, we feel that he obviously did not feel it should be treated as a major controlling factor, and we agree. The evidence shows the appellant has two children ages four and twelve, and the appellee has three children of his own, ages fourteen, sixteen, and nineteen.

The appellant's next argument deals with religious compatibility. The evidence shows the mother of the children was a member of the Roman Catholic Church. All three children were baptized in the Catholic Faith, and the oldest, Gregory, was confirmed prior to the death of the parents. Appellant contends it was error for the trial court to fail to allow some weight to the religious heritage of the children. A review of the evidence shows the appellant is a member of the Catholic Church, although he admitted he has not regularly attended church services but promised to "do better in the future." Appellant also presents evidence showing the availability of Catholic facilities near his home in Hawesville. Included in the appellant's list of available educational facilities was a parochial school.

On the opposite side of the coin, the evidence shows the appellee and his family are Methodists. Appellee's entire family takes a very active interest in church-related activities, and since the death of the children's parents, the appellee's family has included the three orphans in this participation.

In response to the evidence presented by the appellant relating to parochial schools, the appellee candidly points out that the three children have always attended public schools and further that the appellant's school-age child also attends a public school.

We are unable to find any Kentucky case involving the factor of religion in a child custody proceeding that is directly in point with the instant case. However, the issue has arisen in other jurisdictions as evidenced by the annotation in 66 A.L.R.2d 1410. The general consensus of cases dealing with this subject seems to be that the courts may consider religion as a factor in custody cases, but it will not be given controlling weight where there are other important considerations bearing upon the temporal welfare of the child. Actually the above rule is very similar to the established rule in Kentucky that applies to all custody cases, wherein the welfare and best interests of the children are the paramount concerns of the courts. McLemore v. McLemore, Ky., 346 S.W.2d 722, 92 A.L.R.2d 691; Roaden v. Roaden, Ky., 394 S.W.2d 754; Knight v. Knight, Ky., 419 S.W.2d 159.

The third argument advanced by the appellant alleges it was an abuse of discretion by the chancellor in "dividing" the children between the appellant and the appellee. The chancellor made a finding that it was in the best interest and welfare of the children to remain with the appellee. However, due to the age of Gregory, the chancellor allowed him to nominate his guardian. When he nominated the appellant, the practical effect was to divide the three children. We cannot agree with the proposition presented by the appellant that the choice by Gregory should also control the selection of a guardian for the other two children. No doubt the wishes of the oldest child should be given considerable weight, which we assume was done by the trial court. To follow appellant's theory would remove from the chancellor the responsibility of making a determination based on the welfare of the children.

We find no merit in appellant's argument relating to whether or not it was error for the county court to void appellant's appointment as guardian after the appellee informed the court that appellant had not complied with the notice provisions of KRS 387.025. The proceeding before the circuit court was *de novo*, and any reference or objection to the proceedings in the lower court is immaterial.

Appellant has failed to sustain his burden to show that either the chancellor's decision was clearly erroneous, or there was an abuse of discretion. Morris v. Morris, Ky., 439 S.W.2d 317.

The judgment is affirmed.

All concur.